The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. You can be seated. It's our pleasure today to have Judge Elizabeth Dillon from Roanoke come sit with us. She's a new district judge and it's a tradition in this court for us to bring up and ask new district judges to come up here and sit with us and see what it is we do. So when they get their graded papers back, they have some idea of what process the court went through to get there. We're glad to have you. Thank you. It's an honor to be here. All right, Mr. Steedman, whenever you're ready. May it please the Court, my name is Wayne Steedman and I represent the appellants, S.T. and his parents. I respectfully request that 15 minutes be reserved for rebuttal. Fifteen minutes. I'm sorry? Five minutes. Looking at my notes wrong. S.T. is a nine-year-old little boy who is diagnosed with autism spectrum disorder. Not unlike many children with autism, he has significant impairment in his language. He has difficulty taking care of himself. He's unable to dress himself, bathe himself, brush his teeth. I think you can take a note of the facts of the case. Do you want to go to your legal argument on the case? Certainly, Your Honor. Well, this case, assuming the facts, what happened here is that the school system offered a program that could not implement the IEP. The IEP, of course, is the primary document through which a free appropriate public education Are you satisfied? You don't challenge the substance of the IEP, is that correct? Only the part that has to do with placement, Your Honor. Right, only placement. I'm separating that out for my purposes from substance. You think the plan, as it sets out, is sufficient. You just think that the placement has to be at the parent's choice of school to effectuate the plan. Well, Is that right? Not so much the parent's choice of school. I think that it has to be I'm just saying, but in this case, isn't that the parent's choice? It's synonymous in this case, isn't it? It is synonymous, Your Honor. So your answer would be yes? Yes. So I think what it really comes down to is that the school system offered a program that could not implement the IEP. Didn't you say in your due process complaint that the IEP did not address his need for a 12-month program? And now you're saying the IEP required a 12-month program? Yes, but what that indicated was that the Cornerstone Program could not provide a 12-month program, Your Honor. And I'd also said in the due process complaint that the Cornerstone Program was not able to provide a free appropriate public education to the student. So what we had here, and maybe it wasn't articulated in the clearest way, but the pleading requirements under IDEA have been described by the Supreme Court as minimal pleading requirements. When you look at 1415B7, all it says is that the complaint should identify or describe the nature of the problem and offer a resolution. So the nature of the problem was that Cornerstone could not offer a free appropriate public education because it was only a 36-week program. But your client and the school system didn't discuss that at all at the IEP meeting. You say in your brief that everyone knew that. The school system knew, the parents knew that Cornerstone couldn't implement the IEP, but it was just not discussed. Well, the 46 weeks appears on the IEP 18 times. That it wasn't discussed whether Cornerstone could implement it or not, I don't know that that actually came up. I don't think it did. But I think what happened was the parents did say, we disagree with the placement at Cornerstone. Now, parents are not required to come in with a full list, exhaustive list, of the problems with the program that's being offered because this was a complete surprise to the parents. This was an annual review of the child's IEP, and it's required. The child had been at the trellis program for just two months. So this is the end of October, and for the parents to walk in and hear for the first time, without any warning whatsoever, that the school system wanted to move their child in December to a completely different program. To a program, frankly, that had been rejected just four months earlier. Because in June 2013, June 12th... Well, that might be a shock to them. I'm sure it probably was. I want you to understand, as far as I'm concerned, I ask all my questions on the assumption nobody cares more about that child or loves that child more than its parents do. That's correct. But that they were shocked doesn't mean that the placement that the school proposed is improper under that IEP. No, and I'm not saying that, Your Honor, honestly. So then what is improper about the placement? It's my understanding that the program appeared to be, or initially the school, public school, was 36 weeks. Correct. But now it's 46 weeks, isn't it? No. Well, isn't that a fine of fact by the hearing officer, that it's 46 weeks? No, the administrative law judge said it was 41 weeks plus bridge services. Now, bridge services were never identified in terms of the length. As a matter of fact, the only thing that was ever said about bridge services... So now I'm just trying to understand your argument. Your argument is, is this your argument, which I did not understand from your brief, but your argument is it has to be 46 weeks and the public school is not offering 46 weeks in their facilities. That's correct because that's what the IEP says. The IEP is the document that... No, but I want to understand your argument is the IEP calls for 46 weeks and the public school is not offering 46 weeks at this time. At this time, but also at the time of the IEP. But I'm asking about this right now. Right now. What the child is headed toward. Right. And you say that, but the hearing officer found that the public school placement proposed by the school district satisfied the IEP, didn't she? Yes, she did. Okay. And so you claim legal or factual error with what she did? Legal. And the legal error is what? That the information that was provided one month into the due process hearing was retrospective evidence and should not have been considered by the administrative law judge. Now, not only that, but I would also say factually she was incorrect because, once again, we had no evidence, zero evidence, that bridge services would offer really anything with regard to the IEP. The only thing that was ever said about bridge services, pardon me, was that it was a little something more or different between the end of ESY and the beginning of school. Did you argue to the hearing officer just that argument, that the bridge programs are not sufficient, those weeks of bridge programs, that period is not sufficient to come up to the 46 weeks? Did you argue that to her? Yes, we argued. Did she reject it? I guess so. I mean, obviously she did. Right. And we argued that we had no information about bridge services. We knew nothing about it. And, frankly, we don't even know how bridge services are determined, whether it's in an IEP meeting, which it would really be required to, or whether it's an administrative decision. If you could agree that the program that the school wants to put the child in, which is to offer the services in the public school, if you could agree that that would be sufficient to fulfill the substance of the IEP, would any claimed technical deficiency at the start of the IEP, would that even matter? Yes. Why would that matter? Because the child was getting exactly what the child was entitled to. Why would that matter? Well, an important part of the IDEA is parent participation. So parents are equal members of that IEP team. Now, if the IEP team is allowed to offer one program consisting of, say, 36 weeks, one at the IEP meeting, but then change it at a later time without another IEP meeting, that deprives the parents of an opportunity to participate in the decision-making. No, but I said my hypothetical was if you agreed that those services were the services that the child was entitled to, you still think that would be a violation? Yes, because it denied the parents an opportunity to participate. Even though the parents were getting exactly what they were entitled to under the IEP for their child? Well, I think you have to look at what parent participation in all this. I know that, but the parents were getting exactly what they thought they were getting in the initial IEP. That's my question to you. I'm trying to draw out the, I don't know if it's a technical violation, but some change in the plan. It strikes me that what the most important thing should be is that your child gets what the child is entitled to under the law. I agree, Your Honor. I mean, the child should get what the child needs. That's the whole purpose of developing an IEP. But the parents are equal members of that team, equal participants. Well, that sounds nice to say that, but what little significance does that have? Well, there's an IEP that the parents are part of. And because you told me to start with, you said it was a placement. That's what you, I asked that first question. You said, I tried to draw the distinction between the placement and the substance. Sure. And you said it was the placement. Right. What if the new placement can provide everything that the substance requires under the IEP? Why does any lack of parental involvement matter then? Because it's what the law requires. No, but he had parental involvement. Well, no. Do you understand the question I'm asking you? But I think the way you're hypothetical, if you will, changes the facts in a way that denies the parent involvement because they're changing the program. Now, if they had offered this 41 weeks plus bridge services at the IEP meeting in October 2013, we have a completely different situation here because then the parents have that information before them where they can then – Let me change the hypothetical and then I'll let the other judges ask. Okay. What if you have an IEP and it calls for placement in a private institution because a public school at that time could not offer, could not fulfill the substance? And then the world's greatest teacher and counselor and therapist on this program comes to that public school and can now give the – every expert in the world would agree these are the best people to provide the substance of the IEP. And so the school goes, we can do one better than the private school placement. We have the best – you agree, my hypothetical. Everybody agrees it's the best in the world. We're going to place them with them in the public school setting. You say that's still a violation of the law. If they did not have an IEP meeting to make that change because that's what's required by the law. And 1415 F3E specifically states that if parents' participation in the decision-making process is significantly impeded, it's a denial of faith. It's black and white in that regard, Your Honor. So I would argue that anytime that there's a change in the program, the placement, there has to be an IEP meeting, even if the suggested recommendation is far superior to what was originally being offered, like in your hypothetical. The law requires that parents be a part of that decision-making because maybe the school thinks this is a great improvement, but maybe the parents don't. Maybe there's a reason – In my hypothetical, they did. Okay, in your hypothetical, everybody agrees. Your point is you don't care what the parents think or don't think. It's just a requirement that the parents have a say, even if they're going to lose, for any change in the plan. That's what your position is. That's what the law's position is, Your Honor. And that's your position on what the law is. Well, okay. That's my interpretation. I take that. But I think that parents can waive those sorts of things. So they can waive an IEP meeting. They can say to the school, You're right, you're offering a great program. Let's just do it. We don't need an IEP meeting. We'll waive our right to that IEP meeting. So that would be a slight change in your hypothetical, but I think that they could do that. So, again, getting back to this thing with the bridge services, again, the bridge services is not even mentioned in the IEP. Now, this court in AK said that the determination of a free, appropriate public education is limited to the terms of the IEP. Well, bridge services is not identified in the IEP at all. We have a 40-page IEP. Bridge services is never mentioned. Yet the district court and the ALJ relied on bridge services in making their determination that the school system had offered a free, appropriate public education. That is an error of law. To include that, an error of law to say that we're going to include something in our determination in determination of FAPE when it wasn't even in the IEP. I got a little off track here, so I'm going to try and get right back on where I have a couple of minutes here. Yes. Even if this court were to agree that this retrospective evidence that was presented at the due process hearing was admissible, we still don't have a 46-week program. And I guess that gets back to what Judge Shedd was saying earlier, and that is that without a description of what bridge services are, what that would provide, how many weeks that would be, all we have at best is a 41-week program. And again, I would say that information should not even have been considered. That was an error of law to consider that because it was retrospective evidence. Now, we also have evidence that the Trellis School is a 46-week program. And when we have 46 weeks duration on the IEP, that means that that entire IEP must be implemented the entire 46 weeks. Let me ask you a question about that because wasn't he planning to go to Cornerstone, be transferred to Cornerstone in December? There are 46 weeks between the transfer date and the end date of the IEP. I'm not sure I understand your question, Your Honor. He was going to be transferred to Cornerstone in December. Correct. The IEP, the end date for the IEP was in October. Correct. Isn't it true that that span of time is 46 weeks? Yes. But therein lies the problem because Cornerstone could not provide the 46 weeks in that span of time. The start date was October 2013, end date was 2014, October 2014. Cornerstone ended in June and followed the Howard County School System calendar and ended in June, which meant that the whole summer was open. Now, they did say that he could have ESY services. And as I pointed out in my brief, ESY is significantly different than a program of 46 weeks, which is year-round, a 12-month program, because the 46 weeks requires full implementation of the IEP during that time. ESY doesn't. Maryland Technical Assistance Bulletin, well, let me first start with Roosh V. Fountain, which is a Maryland District Court case in which Judge Garbus said that they're very different. A 46-week program, year-round program is very different than an ESY program. The Maryland State Department of Education, this is in the joint appendix of page 66, notes that ESY is not a continuum of the entire IEP. It's not a 12-month program. It's not even intended to be all day or every day. But when you have a 46-week program, it is. So there's a significant difference. You can't add ESY to 36 weeks and say that's a year-round program. It doesn't work that way. I see my time is up. Thank you very much. We've got some time remaining. Let's hear from Mr. Crew. Good morning. May it please the Court, my name is Jeffrey Crew. I represent the Howard County Public Schools and Dr. Renee Foos, Superintendent. The parents at page 30 of the reply brief emphasize, and I quote, that the central issue in this case is whether the Cornerstone Program at Cedar Lane, at the time the placement was offered to ST, was able to provide a 46-week, 12-month program as the IEP required. Both ALJ Schock and Judge Motz concluded that ST did not require a 12-month educational program in order to receive a free and appropriate public education. The parents do not challenge, as Your Honor pointed out, Judge Shedd, they don't challenge that substantive ruling on appeal, and I heard Mr. Steedman kind of vacillate on that, but they don't challenge it. Rather, they argue that a notation stating, quote, unquote, duration 46 weeks that appears in the October IEP document, entitles ST to a program that operates 12 months a year without regard to the question of whether he needs it or not. According to the unrefuted facts before this court, the duration 46-week notation and the Cornerstone Program's ability to implement it was never discussed at the October 21, 2013 IEP meeting, as Your Honor, Judge Dillon pointed out. It was not raised in the due process hearing request. I sat through this hearing for five days. I never knew that was an issue. It was alluded to only one time in testimony at the five-day due process hearing. It was not mentioned by ALJ Shock in her findings of fact, was not raised in the complaint in the district court, and was not addressed by Judge Motz in his memorandum opinion. The entire argument regarding the duration 46 weeks notation was not even part of the case until the parent's attorney raised it in his closing argument. The only evidence that suggested the Cornerstone Program was incapable of implementing an educational program that operated 12 months a year was the mother's rebuttal testimony at page 1265 of a 1270-page evidentiary transcript that she assumed that the Cornerstone Program was. Let me ask this. Is it your position that the do you understand the distinction I draw between what I call the substance of the IEP and the placement? I totally do. You do understand as well. The other side says, well, the placement is critical to the substance. Do you understand that argument? Do you understand it? I certainly try to understand it, but in this case it's a stretch. I can explain it to you. They say that the services that are required under the IEP, this is their argument, there's not any evidence, or they don't believe and there's been no IEP to determine that the new program, the public school program, can supply those substantive provisions. That's what they say. Do you understand that to be the argument or you don't? Here's the point, Your Honor. First I ask that you understand that. I do understand. Okay. Now, what do you say in response to that? I say in response to that that if they had a concern about it, they should have raised it at the IEP team meeting. They shouldn't have sat back on their hands and enjoyed the luxury of playing a game of gotcha with the school system. If they felt that the IEP said 46-week duration, then they should have said something at the IEP meeting. Let me ask this. For sake of argument, if we accept their position, which is this, at the point, I take it to be their argument, at the point of the IEP adoption, that might be a term of all, but at the term of the IEP conference, we were satisfied with the substance and we knew there was only one place where that could be done. Is that not a valid argument by them? In other words, we knew at that point the public school could not supply what was required in the IEP. With all due respect, Mr. Chad, the Howard County Public School System is the top performing public school system. You know what, I didn't ask you for an ad for them. I didn't ask you for an ad for them. I just asked you, it seems to me that's their position. I may have it wrong, but it seems to me that they felt at the time of the conference that they agreed to the substance of the services to be provided to their child. But at that point, I'm just asking, is this factually correct? At that point, could the public school system supply and give the services of the IEP to the child? Absolutely. Absolutely. So why was the child then placed in the other school? I thought it was at one point that the school decided that they could not give it. Well, Your Honor, the IEP provided for 36 weeks of service plus ESY. Both Judge Schock and the district court found that that was sufficient to meet his needs. Now, what the parents have come up with is this very creative argument at the last minute, after not raising it anywhere before, to say, well, but the IEP says 46 weeks and the Cornerstone program is only 36 weeks plus ESY. It couldn't implement it, so we got you. Well, the simple point is they were at the IEP team meeting on October 21, 2013. If they saw an irreconcilable conflict between a notation in the IEP document and their assumption about what the Cornerstone program should offer, wouldn't equity and fair dealing dictate that they stand up and exercise their right of parental participation? Judge Schock said they had a full right of parental participation. It wasn't that they were denied the right of parental participation. If they saw an irreconcilable conflict, they were duty-bound to bring it up because, as this Court said in the Combs case that I cited, that before a school system can be held liable, they have to be made aware of the- Get the chronology straight for me. Isn't it correct that at one point the public school decided they could not supply the services properly for this child? Oh, that was, well, I don't know that they ever said that they couldn't. Well, I thought the recommendation was to move him because the placement where he was in couldn't provide him the services he needed. That's not in the record. November 22, 2011, he was placed at a public school program called the MINK program. In November of 2012, he was referred to the central IEP team because he wasn't progressing in that MINK program. And what came of that? I thought that was that he had to be placed in another program. Well, then he was placed in January of 2013 at the trellis program at the Cedar Lane School. Now, the trellis program is this private program that Howard County allowed to have space at Cedar Lane. Rather than have the child go 20 miles to their campus, they, the Howard County Public School System, gave trellis space. I understand that, but he was placed in that trellis program then because the other program in the public school wasn't sufficient. Right, but then the point is that at some point, we got a new superintendent who had the good sense to say, well, wait a second, we're providing space for this trellis school here at Cedar Lane. No, I actually thought your stronger point there was the fact that the school system was willing to do something for the child if they couldn't provide for him properly with public school services. It seems to me that makes one heck of a case for the school system. That the school system, to what significance it has legally, but it looks factually, I don't see how it can be argued, that the school system, the public school officials, did an analysis of what this child needed and said, we cannot do it at the public school system the way it is now constituted, so we therefore, we will let him be in a private program. I thought that's the strength. To me, that's the evidence. This public school system isn't trying to hurt this child in the slightest. And they are willing to rule against themselves, in essence, if the child's interest rise above it. And that was the point, Your Honor, that they placed him in the private school, but then they went a step further and said, you know, we can replicate these services. The question was raised about what if the greatest special educator… They went a step further. The school system. What Dr. Foos did when she came in, she said, okay, we're running, we're giving trellis space here at Cedar Lane. We can provide a better program than them right here in the same room, in the same school. We will call it the cornerstone program going forward. It will take place right here in the same school with our educators who have 20 years of experience. Go through the chronology, and then when was the IEP conference at this point that they were challenging? What they did in June… Who is they? What the school system did in June, the IEP team, they said, well, ST has only been at this trellis program… When was the IEP conference that's now in question? Well, that's the October 21 conference, which is when the school system said, our cornerstone program is now up and running. It can provide services better than the trellis school. By this time, ST was attending the trellis school at Hunt Valley, 20 miles away. In October, cornerstone was up and running. They said, we can do better. And you met with the parents? Met with the parents. And said, this is the program? Said, this is the program. And then they challenged that? They did not open their mouth about the 46-week duration. They challenged it at the IEP meeting because they said it was too many transitions. They challenged the speech services. There were six different issues. You said they didn't challenge the length of the plan. No, they never said that the 46-duration notation was an issue. They never said at the IEP meeting, ladies and gentlemen, this program is incapable of implementing the very IEP that you just drafted. I mean, it raises a question. But didn't the ALJ find that the plan as you proposed it does meet the 46-week requirement? It really wasn't before her. I didn't ask for that. I said, did she decide that? There's a paragraph where she said that they could do it. You know, it's a simple question. Did she decide that? She did. Okay. So what do you make of that, the fact that she did decide this was sufficient under a 46-week program? What does that do to your whole argument? I think, in all due respect, this is a very simple case for this court. I really ‑‑ I handle more of these cases than anyone in the state of Maryland. And I still have trouble wrapping my mind around why I'm here today talking about this. But the truth of the matter is ‑‑ We're beginning to wonder, too. Well, the truth of the matter is that the case that you're presented with is a very different case  and it's a case where they didn't raise this issue in their due process hearing request. The IDEA requires, and this court said in the AK case, that this court will not consider an issue, even if it was decided by the district court, if it wasn't raised to the ALJ. And it wasn't. There was no testimony about the 46-week duration. I want to be sure I understand your position, and I thought this was your position, that the 46-week issue wasn't even at issue in the IEP conference. It was never raised. But now that has come up. And at the hearing it came up, I guess, because the magistrate judge, I mean, the hearing officer, did rule on it correctly. She devoted a paragraph to it because ‑‑ Well, I'm not trying to play a game. She commented on it in her order, didn't she? She did. And didn't she find that that 46-week program, the school could meet that? Yes, with bridge services. So she did rule on it? Yes. And Mr. Stephen bristles at the concept of bridge services and that it only came up at the hearing, but that's the point. As Judge Dell pointed out, was it raised at the IEP meeting? No. Well, if it came up at the IEP meeting, I think one of two things would have happened. The school system would have realized that that 46 weeks really didn't apply to the program that it was discussing. As Your Honor was trying to point out, I thought, that 46 weeks refers to the duration of the IEP. It doesn't refer to the duration that the receiving school would be in operation or in session. That's not even part of the IEP document. If they would have said, if the parents would have said at the IEP meeting, well, how about this 46 weeks duration, what they would have been told, that's the duration of the IEP. The IEP goes from October 2013 to October 2014. Conversely, if the parents said, well, we read this to mean 46 weeks and you can't change it, and the school system said, well, we won't change it, then there probably would have been a discussion. Did you make that argument to the ALJ? It really wasn't an issue. I said it in my closing argument, kind of off the cuff, as I'm kind of drawn away from my prepared comments today, but it wasn't an issue in the case. But it looks to me, this looks to me, for whatever reason, the hearing examiner thought it was an issue in the case because she responded to the arguments against it and ruled in your favor. Right. She did. So she thought it was there. Well, again, I think she addressed it in an abundance of caution because it was the centerpiece of Mr. Stevens' closing argument, but it wasn't in his due process hearing request. What do you make of his argument that even if the school, except in his premise that it was a required length of time service, 46 weeks, and his argument is even if the school could later say a placement within the public school could meet that IEP requirement, that you still would have to have a conference with the parents to even make that change, to make that placement change? Well, you know, it's a lot of hypothetical because as Judge Motz pointed out, what you're really talking about at that point is a procedural violation that had no impact on the child. Had they sent this student to the Cornerstone program, which they never had any intention of doing, and as this court said in MM v. Greenville County, that there could be no educational deprivation because the parents never had any intention of sending the child to the public school in the first place. But if they had sent them to Cornerstone, which they had never had any intention of doing, and said sometime in April, ladies and gentlemen, you know this IEP says 46-week duration. We expect you to be in session for 46 weeks. That's where Ms. Zimmerman's comments would have kicked in because, sure, this is the Howard County public school system. I regret having to say it, but it is the top school system in the state of Maryland. There's no indication that it could not have marshaled its assets to implement the IEP as written. Problem is, they never had a chance to do it because the parents knew from day one that they weren't going to accept the Cornerstone program. They didn't send the child there. Everything that they're alleging is nothing but a procedural violation with no educational impact, and your DiBuo case is really the best case on point to say that unless there is an educational impact, a procedural violation is not remedial under the IDEA. I hope I've addressed all questions. I don't know that there's anything more that I have to say, and I don't want to bore you on your first case of the morning, but most respectfully, we would ask that the decision of the U.S. District Court be affirmed. I think we understand your position. Mr. Stevens will reply. Thank you, Your Honor. With regard to the 46 weeks, the IEP team determined that 46 weeks is what was needed in order for ST to receive a free appropriate public education. That issue was never raised before the administrative law judge or the District Court. So we always said that any finding that ST did not need 46 weeks was not a proper finding because it was never an issue. The issue was always, could Cornerstone implement the 46-week program? Now, the argument is that it should have been raised during the IEP meeting. What I will tell you is that the cases that are cited in the appellee's brief all talk about cases where parents left the school system, you know, unknowing anything, that they had any disagreement with the IEP or the program or placement whatsoever. And so they blindsided the school system with a due process complaint. Here, counsel even pointed out that parents brought up a number of concerns. They didn't have a complete and exhaustive list of every concern that they have, but parents aren't required to do that. They put the school system on notice that they disagreed with that Cornerstone program and that they didn't feel that that program would be appropriate for him. But they had a whole laundry list of problems with the program, but one of them was not the central part of what you're saying your argument is. That's true, Your Honor, but again, I wasn't there. You know, maybe if I had been there, I could have counseled them to make sure they had a complete list. But let's also keep in mind, they were not, they did not have any advance notice walking into this meeting about this change of placement. And this placement had been considered back in June and ruled out. As a matter of fact, the record tells us that at that time, that IEP team said it would be detrimental to place ST in the Cornerstone program for the 2013-2014 school year. So they were completely surprised to find that now, suddenly, it's the program that they want to place him in. So once again... Weren't the parents given a draft IEP before the meeting? They were, but they didn't get the placement. That part wasn't included, nor were the service hours included. So it was, they only got one part of that draft IEP in advance, and placement was not on it. And I can only speculate why they didn't inform the parents in advance of their intention to move ST to another program. Did the magistrate judge, the hearing officer, did the hearing officer decide that Cornerstone could equal Trellis's 46-week program by using the bridge services? Yes. So it was in front of her, and she made a finding. Yes. So you dispute that finding? Yes. And based on why do you dispute that? Because there was no evidence before that administrative law judge about what bridge services could provide. We have a 1,000-plus page transcript and multiple documents, Your Honor. Bridge services is never mentioned except one time when Mrs. Zimmerman described it only as a little something different or more between ESY... So your argument is, and it's two-fold now as I understand it, that there was a procedural error in the no-parent conference on the change in placement... Correct. And that the hearing officer's findings are clearly erroneous because there was no evidence in front of her on bridge services. Well, that, yes, but my argument goes beyond that because this court said in AK that you look at the terms of the IEP to determine you're limited to the terms of the IEP to determine whether FAPE was offered. Bridge services does not appear in there. And so I think any reference to bridge services in saying that FAPE was offered at Cornerstone was an error of law. It certainly flies in the face of what this court has said in previous rulings. I just want to be clear that when we talk about the 46 weeks, once again, that was an IEP team decision, and it was agreed upon. Everyone agreed to that. So it was not properly before the administrative law judge or the district court or even this court to challenge whether or not ST needed 46 weeks. The only issue is Cornerstone. Needed 46 weeks. Needed 46 weeks. Yes, Your Honor. 46 weeks. In order, 46 weeks of full implementation of that IEP. But the hearing officer didn't challenge that, did she? She didn't say that the program didn't have to be 46 weeks. She didn't say that, did she? She said that the 46 weeks could be met. She indicated in her ruling, and I was a little confused about it, I'll be honest, Your Honor, but I was a little confused about it, that she did say that Cornerstone, with the combination of 41, the additional 41 and plus bridge services, I'm sorry, I see my time is up. May I answer your question? That that combined to make 46 weeks, but then at the same time said that, well, but there's no evidence that the child really needs it. I feel like the IEP is the dispositive evidence that the child needed 46 weeks. Thank you very much. Thank you. We'll come down and recast and then go into our next case.
judges: William B. Traxler, Jr., Dennis W. Shedd, Elizabeth Kay Dillon